IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CITIZENS OPPOSING POLLUTION**,

Petitioner,

v.                                                                                  No. 14-1107-DRH

**SALLY JEWELL, SECRETARY
OF THE UNITED STATES DEPARTMENT
OF THE INTERIOR,**

Respondent.

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

Pending before the Court are intervenor ExxonMobil Coal USA, Inc.'s motion to intervene (Doc. 14) and respondent Sally Jewell's motion to dismiss (Doc. 5). Based on the following, the Court grants both motions.

On October 15, 2014, Citizens Opposing Pollution ("COP") filed a writ of mandamus pursuant to 28 U.S.C. § 1361 (Doc. 2).  Petitioner seeks to compel three actions by writ of mandamus regarding the Illinois approved state mining program ("Illinois Mining Act") and its federal counterpart, the Surface Mining Control and Reclamation Act of 1977 ("SMCRA").  The petition asks the "Court to issue a Writ of Mandamus for inadequate control of coal mining operations and reclamation to Respondent Department of Interior **Secretary Sally Jewell** requiring the Secretary to revoke approval of Illinois' Coal Mining program and to follow procedure set forth in the Surface Mining Control and Reclamation Act, 30

U.S.C. § 1271(b) …" (Doc. 2. p. 1, emphasis in original).  In the petition, COP is asking the Court to:

(1) require the Secretary to revoke approval of Illinois' Coal Mining program for inadequate control of mining operations and reclamation;
(2) require the Secretary to perform her ministerial, non-discretionary duty under 30 U.S.C. § 1271(b) of the SMCRA to give notice to the public and the State and to hold hearings within thirty days of such notice in the State, to determine whether current permit holders of coal mining operations and refuse disposal areas in Illinois are in compliance and whether the Illinois provisions of law are being enforced as required under the SMCRA; and
(3) require the Secretary to perform her ministerial, non-discriminatory duty under 30 U.S.C. § 1271(b) of the SMRCA to give notice to the public and that State and to hold a hearing within thirty days of such notice in the State, to determine whether ExxonMobil Coal USA obtained a proper permit for reclamation of the Monterey Coal Mine No. 2 Refuse Disposal Ares and to determine whether the current Reclamation Plan satisfies the requirements to return the land to its former use as prime farmland or to a higher better use, to return the land to its natural contours, to remove all permanent impoundments with waste properly disposed of, and to determine whether the groundwater was restored for use as drinking water to the community.

(Doc. 2, p. 23-24).

A recitation of the facts surrounding this lengthy litigation is provided herein as set forth by the Illinois Supreme Court in *Citizens Opposing Pollution v. ExxonMobil Coal USA*, 962 N.E.2d 956 (Ill. 2012).

Background

In 1977, Monterey began surface and underground coal mining operations at its Mine No. 2 in Clinton County. The Mining Act, which is administered by IDNR, requires that no person shall conduct mining operations without first obtaining a permit from IDNR. 225 ILCS 720/2.01 (West 2008). Each permit application, and application for revision of a permit, must also contain a reclamation plan or revised reclamation plan that meets the requirements set forth by

IDNR. 225 ILCS 720/2.03 (West 2008). Monterey operated at the site, relevant to this appeal, two separately permitted coal refuse disposal areas (RDAs). In 1984, the Illinois Department of Mines and Minerals approved Permit No. 57, which authorized the creation of RDA–1.[2] In 1986, the Department approved Permit No. 183, which authorized the creation of RDA–2. The two conjoined RDAs encompass a surface area of approximately 350 acres and contain rock, gravel, sand and other materials that are separated from the coal during coal processing. In 1996, active, ongoing mining operations ended at Mine No. 2. Monterey then began working to permanently close the mine and conduct reclamation work at the site, which included sealing the mine shafts and removing coal mining facilities and equipment.

On December 21, 1999, IEPA, which implements the water quality provisions of the Environmental Protection Act (415 ILCS 5/1 *et seq.* (West 2008)), issued a violation notice to Monterey. The notice alleged that Monterey's coal mining waste disposal areas violated groundwater quality standards for total iron, manganese, sulfate, chloride, and total dissolved soils. Without admitting to the alleged violation, Monterey worked with IEPA, and a corrective action plan which included a groundwater management zone to treat impacted groundwater under and around the two refuse disposal areas was developed and approved by IEPA on June 24, 2002. The plan required, *inter alia,* the installation of an underground bentonite barrier wall and the construction of a treatment system which routes impacted groundwater from extraction wells through a treatment area before discharging it off site. Monterey was also required to monitor groundwater quality and provide annual reporting to IEPA.

On March 3, 2004, after a public hearing and comment period, IDNR approved revisions to Permit No. 57 and Permit No. 183, which incorporated the corrective action plan with the groundwater management zone, that allowed Monterey to implement and complete reclamation work at Mine No. 2.[3] The terms of the permit revisions provided, in pertinent part: (1) the two RDAs would remain onsite and the interior which contained exposed coal refuse on the surface would be reclaimed with a soil cover and vegetation; (2) a detailed description of the postreclamation land use designations, which specified that the RDAs and the land immediately adjacent to them would constitute "pastureland" as defined in the administrative regulations (see 62 Ill. Adm.Code 1701 app. A (2012)) after completion of the required reclamation work; (3) the final contour of the land would approximate the premining site topography with the exception, in pertinent part, of the two RDAs; and (4) the operation of the groundwater management zone was designed to prevent or mitigate any material damage to the

hydrologic balance outside the proposed permit area and minimize the disturbance within the boundaries. Monterey represents that the reclamation project was substantially completed in December 2006, and that it expended more than $28 million to complete the RDA portion of the project alone, which included the construction of the groundwater management zone.

State and Federal Administrative Appeals

On March 29, 2004, Langenhorst filed a request for administrative appeal with IDNR, challenging the department's approval of the revisions to the permits. Langenhorst was later joined in his appeal by other Clinton County residents. They raised, among other issues, whether the proposed remediation plan for the refuse disposal areas was adequate in addressing contamination of the underlying Pearl Sand aquifer. On May 25, 2005, a final administrative decision, which adopted the order of the hearing officer granting summary judgment in favor of Monterey and IDNR, was entered. Concerning the groundwater issue, the hearing officer had found, in pertinent part:

"Petitioners and their expert witness Robert Johnson have admitted the revisions as approved prevent material damage to the hydrologic balance outside the mine property and minimize the disturbance of the hydrologic balance within the boundaries of the mine. That satisfies the regulatory requirements and requires summary judgment in favor of the Department and Monterey."

The petitioners did not seek review of this final administrative decision in the circuit court, as allowed under section 8.10 of the Mining Act (225 ILCS 720/8.10 (West 2008)).

In June 2005, Langenhorst filed a citizen complaint with the United States Department of the Interior, Office of Surface Mining Reclamation and Enforcement (OSM), pursuant to section 1267(h) of the Surface Mining Control and Reclamation Act of 1977 (30 U.S.C. § 1267(h) (2006)), requesting that OSM review the adequacy of the reclamation plan at Mine No. 2.[4] OSM accepted as his citizen complaint, among other issues, whether there was a failure to protect the groundwater at the mine site. OSM's Alton Field Division (Field Division) ultimately determined, in pertinent part, that since Monterey was appropriately implementing the state-mandated remedial plan designed to bring about abatement of the existing water violation, IDNR was taking appropriate action to continue enforcing the

corrective action plan and had good cause for not taking additional enforcement action. On April 10, 2006, OSM's Regional Director, Mid–Continent Regional Coordinating Center, affirmed the decision of the Field Division. Langenhorst appealed that decision to the Interior Board of Land Appeals, an administrative appeals board in the United States Department of the Interior. On February 20, 2008, the Interior Board of Land Appeals affirmed the decisions of the Regional Director and the Field Division.

On January 4, 2007, Langenhorst filed a second state administrative appeal with IDNR. In December 2006, IDNR had approved an incidental boundary revision to Permit No. 57, which allowed for an additional parcel of land for an underground wastewater discharge pipeline that was necessary to implement the groundwater management zone. Langenhorst challenged whether this underground pipeline was a continuation of mining operations that would require Monterey to comply with additional mining statutory and regulatory requirements. On July 18, 2007, the hearing officer entered summary judgment in favor of Monterey and IDNR. The order also provided, in pertinent part, that "Langenhorst's [s]ummary [j]udgment [m]otion is replete with inaccurate statements and refuted testimony. * * * The fact that Mr. Langenhorst is attempting to relitigate issues already decided and encompassed by a previous administrative appeal makes me inclined to consider sanctions against Mr. Langenhorst." As with the first state administrative appeal, Langenhorst did not seek review in the circuit court.

### Current Lawsuit

On August 8, 2008, plaintiff filed an 18–count complaint against Monterey, IEPA, and IDNR under the citizen suit provision contained in section 8.05(a) of the Mining Act. The complaint sought, in pertinent part, to declare that the reclamation plan contained in the revised permits did not comply with the performance standards of the Mining Act by allowing Monterey to permanently retain the two impoundments of coal mine waste at the site. Plaintiff sought to require Monterey to submit a permit renewal application that would comply with all of the requirements of the Mining Act and IDNR's regulations. In response to defendants' motions to dismiss, plaintiff filed motions for leave to file an amended complaint and for the voluntary dismissal of IDNR. The trial court granted the motions.

Page **5** of **18**

Plaintiff filed the instant six-count amended complaint on December 22, 2008. In count I, plaintiff alleged, in pertinent part, that Monterey violated section 3.03 of the Mining Act by failing to restore the land where the two RDAs were situated to a condition capable of supporting the same use or a higher or better use than before mining. In count II, plaintiff alleged, in pertinent part, that Monterey violated section 3.08(b) of the Mining Act by permanently retaining impoundments of coal mine waste at the site. In count III, plaintiff alleged, in pertinent part, that Monterey had permanently graded Mine No. 2 in a manner that failed to restore the affected land to its approximate original contour, as required by section 1.03(a)(2) of the Mining Act. In count IV, plaintiff alleged, in pertinent part, that Monterey disturbed the hydrologic balance and failed to protect the quality and quantity of the groundwater by permanently retaining the two impoundments of coal waste in violation of section 3.10(a) of the Mining Act. In count V, plaintiff alleged, in pertinent part, that IEPA violated section 4.09 of the Mining Act by developing and approving the groundwater management zone because it negatively impacted the quality and quantity of the groundwater at the site. Finally, in count VI, plaintiff alleged, in pertinent part, that Monterey was not complying with the Water Use Act by failing to follow the rule of "reasonable use," as provided in section 6 (525 ILCS 45/6 (West 2008)), by pumping excessive quantities of groundwater from the Pearl Sand aquifer. Specifically, plaintiff alleged that Monterey in order to comply with the corrective action plan approved by IEPA must pump 4 million gallons of water from the aquifer each week, which exceeds Monterey's fair share for the size of its facility.

In all five counts against Monterey, plaintiff sought injunctive relief to require Monterey to remove the permanent impoundments known as RDA–1 and RDA–2 and to dispose of the waste contained therein off site. In count V, plaintiff sought the immediate revocation of the groundwater management zone and a ruling that any future groundwater management zone developed by IEPA for the site must comply with the Mining Act. In count VI, plaintiff sought to require Monterey to develop and implement a written plan that limits the extraction of groundwater at the site to no more than 100,000 gallons per day. In all six counts, plaintiff sought costs, fees, and any other relief the court deemed appropriate.

Monterey moved to dismiss counts I through IV of the amended complaint pursuant to section 2–619 of the Code of Civil Procedure (Code) (735 ILCS 5/2–619 (West 2008)) and count VI pursuant to section 2–615 of the Code (735 ILCS 5/2–615 (West 2008)). IEPA moved to dismiss count V under sections 2–615 and 2–619 of the Code.

On April 28, 2009, the trial court dismissed plaintiff's amended complaint on all counts with prejudice and entered an order which provided, in pertinent part:

"All parties agree that in order to operate the mine [Monterey] had to and did obtain a permit from [IDNR]. All parties agree that the permit does provide for a reclamation plan. Under the Act the permit and the reclamation plan are not approved unless IDNR finds that all statutory requirements are met. Plaintiff concedes that it has no evidence to show that either [Monterey] or IEPA is violating the terms of the permit or the terms of the reclamation plan. * * * [Section 8.10 of the Act] provides that final administrative decisions of [IDNR] shall be subject to judicial review pursuant to the Administrative Review Law * * *. Plaintiff concedes that the time to challenge the permit which included the reclamation plan has expired, but plaintiff argues that 8.05(a) authorizes a suit for any violation of the Act by any aggrieved person. The court disagrees with plaintiff's assertion that 8.05(a) allows a suit to challenge what IDNR has previously approved through approval of the permit and reclamation plan. * * * The court is persuaded by IEPA's argument that it is not a violator of the Act since at best it simply approved a groundwater management zone that was incorporated into the terms of a permit reclamation plan. The court's understanding of [the Act] is that IDNR issues permits, and that permits and permit revisions include reclamation plans. To the extent that the groundwater management zone approved by IEPA is at all relevant, it is only relevant within the context of IDNR's approval of the permit revision and reclamation plan. * * * [Monterey's] * * * motion to dismiss count VI is granted. The Water Use Act provides no private right of action."

The appellate court reversed the trial court and held that counts I through IV and count VI against Monterey were allowed under section 8.05(a) because those counts alleged various ongoing violations of the Mining Act. The appellate court concluded that plaintiff was not collaterally attacking permitted activity in those counts because there

was no dispute that the permits had expired. As for count V, the appellate court concluded that the allegation that IEPA violated the Mining Act by authorizing the groundwater management zone could also proceed under section 8.05(a). The appellate court held, however, that to the extent that portions of count V constitute a collateral attack on the previously issued permits, the trial court was correct in dismissing it. Concerning count VI, without conducting any significant analysis, the appellate court concluded that the Water Use Act provides a private right of action because "section 8.05 of the [Mining Act] specifically allows such enforcement actions." 404 Ill.App.3d at 556, 344 Ill.Dec. 39, 936 N.E.2d 181.

The appellate court also rejected defendants' argument that plaintiff's action was barred by *res judicata* and collateral estoppel due to the state and federal administrative appeals. The appellate court reasoned that "Exxon" was not a party to the previous litigation and plaintiff's claims involved allegations of ongoing environmental concerns. Additionally, the appellate court rejected defendants' argument that IDNR was a necessary party to this case and concluded that upon remand IDNR could be added by either Monterey or IEPA, or the department could seek to intervene. Consequently, the appellate court reversed the dismissal as to the five counts against Monterey and modified the dismissal of the sole count against IEPA to be without prejudice. 404 Ill.App.3d at 558, 344 Ill.Dec. 39, 936 N.E.2d 181.

Monterey and IEPA both filed petitions for leave to appeal that were allowed by this court, which consolidated the cases. Ill. S.Ct. R. 315 (eff. Feb. 26, 2010). We also allowed IDNR and the Illinois Coal Association to file *amicus curiae* briefs on behalf of Monterey and IEPA. In addition, we allowed the Illinois Chapter of the Sierra Club to file a brief *amicus curiae* on behalf of plaintiff.

*Id.* at 959-963 (footnotes omitted). The Illinois Supreme Court held that: (1) the circuit court review of terms of permit was not available to the citizen group under Mining Act's citizen suit provision; (2) the fact that company's mining permits had expired did not permit the citizen group to challenge terms of permits in citizens suit under Mining Act; and (3) the company was not required to follow rule of

reasonable use under Water Act when taking water from aquifer to implement corrective action plan for ground water management zone.

Well after the Illinois Supreme Court issued its decision, petitioner, on March 17, 2014, submitted to the Secretary a request to withdraw approval of Illinois' Coal Mining Program and a 60 day notice that suit would follow if approval is not withdrawn. On November 12, 2014 (after the petition was filed), the OSMRE sent petitioner's counsel, Ms. Livingston, a letter informing her that the OSMRE completed the verification process and that the OSMRE reached a decision regarding petitioner's request. (Doc. 5-1, p.1). Specifically, OSMRE "determined that the facts presented do not establish a reason to believe that Illinois is not effectively implementing, administering, enforcing and maintaining its approved State Program. (Doc. 5-1, p. 1).

The Court turns to address the motion to intervene as the Court finds that it is procedurally proper to decide the intervention question before addressing the merits of the motion to dismiss.

ExxonMobil argues that as the holder of the permits which petitioner seeks to revoke, it may intervene in the action. Petitioner opposes the motion maintaining that "this case is not about permits and it is not about challenging permits outside the inapplicable Administrative Review Act..." Instead petitioner maintains this lawsuit is an attempt "to get the lawfully required remediation of pollution caused by ExxonMobil economic activities and its deliberate and effective manipulation of government entities."

Federal Rule of Civil Procedure 24(a) provides:

**Intervention of Right**. On timely motion, the court must permit anyone to intervene who:
(1) is given an unconditional right to intervene by a federal statute; or
(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed.R.Civ.P. 24(a). Thus, under Rule 24(a)(2), the proposed intervenor must establish: (1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) the lack of adequate representation by existing parties. *Reid L v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1017 (7th Cir. 2002); *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 945-46 (7th Cir. 2000); *Reich v. ABC/York-Estates Corp.*, 64 F.3d 316, 321 (7th Cir. 1995). The proposed intervenor must meet all four criteria. *Reid*, 289 F.3d at 1017.

The Court finds that ExxonMobil has met the required criteria and that intervention is proper under the circumstances in this case. First, timeliness, "forces interested non-parties to seek to intervene promptly so as not to upset the progress made toward resolving a dispute." *Grochocinski v. Mayer, Brown, Rowe & Maw, LLP*, 719 F.3d 785, 797 (7th Cir. 2013). The test for timeliness is essentially one of reasonableness: potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Reich*, 64 F.3d at 321.

Page **10** of **18**

ExxonMobil argues that it did not receive notice of the case until almost a month after the suit was filed and that it did not "discover the full scope of Plaintiff's purpose and design for the litigation until Plaintiff filed its Response to the Dept's Motion to Dismiss (Doc. 9)." (Doc. 14, p. 11). The petition for writ of mandamus was filed on October 14, 2014 (Doc. 2); the motion to dismiss was filed on December 19, 2014 (Doc. 5), the response to the motion to dismiss was filed January 23, 2015 (Doc. 9) and the motion to intervene was filed on February 19, 2015 (Doc. 14). The Court finds that the motion to intervene is timely and that no party will suffer any prejudice by the intervention.

As to the second factor, "[t]he 'interest required by Rule 24(a)(2) has never been defined with particular precision." *Sec. Ins. Co. of Hartford*, 69 F.3d at 1380. The interest of a potential intervenor must be a "direct, significant, legally protectable" one. *Id.* "It is something more than a mere "betting" interest, but less than a property right." *Id*.

ExxonMobil argues that it has an interest in its permits which ExxonMobil argues petitioner seeks to challenge and invalidate. Petitioner, on the other hand argues, that this case does not have anything directly to do with ExxonMobil or its permits *per se* because the central matter for the Court to reconcile is that, because members and officers of Citizens Opposing Pollution and all other Illinois citizens are deprived of any ability to enforce applicable provisions of law regarding regulation of post-mining land use and post-mining land reclamation operations located in the State of Illinois. Further, petitioner argues that this case is not about

permits and that it may proceed because Exxon Mobile's permits are expired. The Court agrees with ExxonMobil and finds that it does have an interest in this litigation. In fact, petitioner's writ of mandamus places the permits at issue and the petition is peppered with reference to ExxonMobil's mining operations and the litigation history regarding ExxonMobil and its mining operations in Illinois. Specifically, petitioner alleges that ExxonMobil's "Permits Nos. 57 and 183 must be reviewed by the Secretary." (Doc. 2, ¶ 87). Further, petitioner claims that respondent must "determine whether [ExxonMobil] obtained a proper permit." Doc. 2, ¶¶ 90 & 101(3)). Lastly, petitioner specifically requests the Court to enter an Order issuing a writ of mandamus directed at the Secretary:

> (2) "Requiring the Secretary to perform her ministerial, non-discretionary duty under 30 U.S.C. §1271(b) of the SMCRA to give notice to the public and the State and to hold a hearing within 30 days of such notice in the State, to determine whether ExxonMobil Coal USA obtained a proper permit for reclamation of the Monterey Coal Mine No. 2 Refuse Disposal Areas and to determine whether the current Reclamation Plan satisfies the requirements to return the land to its former use as prime farmland or to a higher better use, to return the land to its natural contours, to remove all permanent impoundments with waster properly disposed of and to determine whether the groundwater was restored for use as drinking water to the community."

Doc. 2, p. 24. Clearly, ExxonMobil's permits and the reclaimed Mine No. 2 site are protectable interests which relate to the litigation. Moreover, the Court rejects petitioner's argument that it may proceed because the permits are expired. In Illinois, "[a] permittee need not renew the permit if no surface coal mining operations will be conducted under the permit and solely reclamation activities remain to be done." 62 Ill. Adm. Code 1773.11(2). Further, "[o]bligations

established under a permit continue until completion of surface coal mining and reclamation operations, regardless of whether the authorization to conduct surface coal mining operations has expired." *Id.*; *see also*, 30 C.F.R. § 773.4(a); *Citizens Opposing Pollution v. ExxonMobil Coal USA,* 962 N.E.2d 956, 967 (Ill. 2012) ("Consequently, there was no requirement for Monterey to renew the permits because, as is undisputed, only reclamation activities remained to be completed after the permits expired in January 2005 and October 2006. Following the expiration of the permits, Monterey's obligation to complete the reclamation work in accordance with the permits remained unchanged and did not provide plaintiff with a new basis to challenge the terms of the revised permits.").

As to third factor, "[t]he existence of 'impairment' depends on whether the decision of the legal question involved in the action would as a practical matter foreclose the rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp.,* 683 F.2d at 204. Potential foreclosure is measured by the general standards of *stare decisis*." *Id*. ExxonMobil argues that it interests may be impaired and impeded if not allowed to intervene. The Court agrees with ExxonMobil. A ruling in this case that would require the respondent to revoke the IDNR's authority to administer the Illinois mining program and/or requires the respondent to initiate enforcement and review of the permits and the reclamation plan, would diminish ExxonMobil's administrative safeguards. If ExxonMobil is not allowed to intervene, it may be left with no legal means to contest the outcome of the litigation.

Lastly, "[a] party seeking intervention as of right must only make a showing that the representation 'may be' inadequate and 'the burden of making that showing should be treated as minimal.'" *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 774 (7th Cir. 2007)(citations omitted). The Court finds that ExxonMobil has met this prong of the test. The interests of the present parties do not coincide with and are not the same as of ExxonMobil in that they are advancing their own interests. ExxonMobil's interests in its permits and reclaimed Mine No. 2 are personal and specific to ExxonMobil, while the current parties purport to advance and protect interests of the public. Based on the foregoing, the Court **GRANTS** the motion to intervene pursuant to Rule 24(a).

The Court now turns to address the pending motion to dismiss.

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests and (2) plausibly suggests that the plaintiff has a right to relief above a speculative level. *Bell Atl.,* 550 U.S. at 555; see *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009); *EEOC v. Concentra Health Servs.,* 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Bell Atl.,* 550 U.S. at 556).

First, respondent argues that the petition fails to state a claim upon which the extraordinary relief of a writ of mandamus can be granted. Specifically, respondent argues that the Secretary's discretionary decision to take enforcement action under the SMCRA cannot be compelled by writ of mandamus. Petitioner counters that its writ of mandamus supports a valid claim for relief because it has a vested right to seek and obtain relief from respondent under the SMCRA as it has no other adequate remedy at law and respondent's duties under SMCRA are mandatory and non-discretionary. Based on the following, the Court agrees with respondent and ExxonMobil.

30 U.S.C. § 1271(b) provides:

> Whenever on the basis of information available to him, the Secretary has reason to believe that violations of all or any part of an approved State program result from a failure of the State to enforce such State program or any part thereof effectively, he shall after public notice and notice to the State, hold a hearing thereon in the State within thirty days of such notice. If as a result of such hearing the Secretary finds that there are violations and such violations result from a failure of the State to enforce all or any part of the State program effectively, and if he further finds that the State has not adequately demonstrated its capability and intent to enforce such State program, he shall give public notice of such finding. During the period beginning with such public notice and ending when such State satisfies the Secretary that it will enforce this chapter, the Secretary shall enforce, in the manner provided by this chapter, any permit condition required under this chapter, shall issue new or revised permits in accordance with requirements of this chapter, and may issue such notices and orders as necessary for compliance therewith:

> *Provided*, That in the case of a State permittee who has met his obligations under such permit and who did not willfully secure the issuance of such permit through fraud or collusion, the Secretary shall give the permittee reasonable time to conform ongoing surface mining and reclamation to the requirements of this chapter before suspending or revoking the State permit.

Pursuant to Section 1271(b), the Secretary has the discretion to determine whether it "has reason to believe that violations" of the Illinois mining program are occurring. Further, it is clear that 30 U.S.C. § 1271(b) sets forth specific requirements that must be met before the Secretary may take remedial action against a state permittee. Thus, it is not a mandatory or nondiscretionary act as petitioner argues. The Court finds that the "reason to believe" standard is deferential and the Secretary only has a discretionary duty to consider the revocation of a state-approved mining program.

In fact, the record reveals that respondent followed the statute when she considered petitioner's information and determined that no violations exist. Specifically, the OSMRE issued the following in regards to petitioner's March 17, 2014 request to investigate the Illinois approved State Program, as interpreted by the Illinois Supreme Court in *Citizens Opposing Pollution v. ExxonMobil Coal USA*, 962 N.E.2d 956 (Ill 2012), to determine whether the State is implementing, administering, enforcing, and maintaining its program effectively:

> "OSMRE conducted the analysis requested, as required by 30 C.F.R. § 733.12(a)(2)-(d). The verification process entails an examination to determine, among other things, the accuracy of the allegations, whether the allegations relate to an existing requirement of the approved program, and ultimately whether the evidence and

information available creates a reason to believe that violations of all or any party of an approved State program result from a failure of a State to enforce the State program effectively. If so, OSMRE would need to conduct an evaluation pursuant to 30 C.F.R. § 733.12(a)(2). OSMRE analyzed your submission, and for the reasons to follow, has determined the facts presented do not establish a reason to believe that Illinois is not effectively implementing, administering, enforcing and maintaining its approved State Program."

(Doc. 5-1, p.1).

Furthermore, petitioner seems to argue that it wants the Court to mandate a particular decision/result by the respondent that the Illinois Mining Act is now enforced in a way that results in violations and that is contrary to the statutory language. Under federal law, the issuance and contents of permits may only be challenged through the statute's administrative provisions, while citizen suits may only be brought to contest an operator's compliance with the permits. Under the clear language of the statute, mandamus is not available to petitioner. Thus, dismissal is proper under Rule 12(b)(6).

## Conclusion

Accordingly, the Court **GRANTS** intervenor ExxonMobil Coal USA, Inc.'s motion to intervene (Doc. 14). Further, the Court **GRANTS** respondent's motion to dismiss (Doc. 5). The Court **DISMISSES with prejudice** this cause of action. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same. Lastly, the Court **DENIES as moot** the motion to strike (Doc. 20).

**IT IS SO ORDERED.**

Signed this 30th day of July, 2015.

Digitally signed by David R. Herndon
Date: 2015.07.30 12:31:48 -05'00'

**United States District Judge**